UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES BERGESEN,

                              Plaintiff,

                    v.

MANHATTANVILLE COLLEGE,

                              Defendant.

No. 20-CV-3689 (KMK)

OPINION & ORDER

Appearances:

Justin Stedman Clark, Esq.
Levine & Blit, PLLC
New York, NY
*Counsel for Plaintiff*

Matthew Stein, Esq.
Nancy V. Wright, Esq.
Ricki E. Roer, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Plaintiff James Bergesen ("Plaintiff") brings this Action against Manhattanville College ("Defendant" or the "College") pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 291, *et seq.*, alleging that Defendant disciplined him based on his sexual orientation and to retaliate for his complaints about discrimination. (*See* Compl. (Dkt. No. 1).) Before the Court is Defendant's Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (*See* Not. of Mot. (Dkt. No. 13).) For the reasons that follow, the Motion is granted in part and denied in part.

I.  Background

A.  Factual Background

The following facts are taken from Plaintiff's Complaint, (Compl.), and are assumed true for purposes of deciding the Motion.

Plaintiff, an adult gay male, was hired as an employee by Defendant, a private university, in 2004.  (Compl. ¶¶ 6, 7, 11.)  Plaintiff had the title Adjunct Professor and taught art and art-related classes.  (*Id*. ¶¶ 12, 13.)  Defendant is and was aware that Plaintiff was gay because Plaintiff introduced his partner to his colleagues.  (*Id*. ¶ 14.)  Adjacent to the College's campus is Keio Academy ("Keio"), a private high school for Japanese students.  (*Id*. ¶ 15.)  Defendant allowed Keio's students to use its premises, including its libraries, art galleries, and running paths.  (*Id*. ¶ 16.)

On October 29, 2018, a male Keio student on the cross-country team ("EF") approached Plaintiff outside the College's Environmental Center classroom, which Plaintiff was closing after teaching a class.  (*Id*. ¶¶ 17, 22.)  Plaintiff acknowledged EF after he had approached the Environmental Center classroom a few times.  (*Id*. ¶ 18.)  Plaintiff and EF briefly discussed Plaintiff's class, environmental art projects, and art museums in New York City.  (*Id*. ¶ 19.)  EF expressed interest in contacting Plaintiff to learn more about museums in New York City, and Plaintiff provided EF his telephone number.  (*Id*.)  After their conversation, EF continued down the running path adjacent to the Environmental Center classroom.  (*Id*. ¶ 20.)  Several minutes later, Plaintiff noticed EF and several of his teammates walking back down this path and laughing.  (*Id*. ¶ 21.)  According to EF's cross-country coach Yumiko Bendlin ("Bendlin"), EF on October 29, 2018 joked with his teammates about speaking with Plaintiff.  (*Id*. ¶ 22.)  Bendlin asked EF if he was touched or if Plaintiff touched himself in an inappropriate manner, and EF

said no.  (*Id*. ¶ 23.)  Bendlin further observed that it did not appear that EF was shaken by the incident, and that he was more concerned about his exams.  (*Id*. ¶ 24.)  Nonetheless, Bendlin reported Plaintiff's conversation with EF to the College's Campus Security ("Campus Security"), who contacted the Harrison Police Department (the "Police").  (*Id*. ¶ 25.)

The Parties dispute whether the Court may consider Bendlin's written report to Campus Security (the "Statement").  Defendant argues that Plaintiff incorporated the Statement into the Complaint by making references to and quoting from it, and, therefore, the Court may consider the Statement when deciding the Motion.  (Mem. of Law in Supp. of Def.'s Mot. ("Def.'s Mem.") 11–12 (Dkt. No. 15).)  Plaintiff, in contrast, argues the Statement cannot be considered because the Complaint only quotes it twice, which is too limited to constitute incorporation by reference.  (Pl.'s Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") 12–13 (Dkt. No. 16).)

When considering a motion to dismiss, a court generally cannot consider evidence outside of the pleadings.  *See* Fed. R. Civ. P. 12(d).  Pleadings, however, include not just "the four corners of the complaint, but also 'any written instrument attached to it as an exhibit or any statement or document incorporated in it by reference.'"  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59 (S.D.N.Y. 2010) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  A statement is incorporated in the complaint if the plaintiff makes a "clear, definite[,] and substantial reference to the documents."  *Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.*, No. 14-CV-7134, 2015 WL 4940126, at *7 (S.D.N.Y. Aug. 10, 2015) (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003)).

In the Complaint, Plaintiff makes several clear references to the Statement and quotes it twice.  (*See* Compl. ¶¶ 23 (alleging that Bendlin "asked him [EF] if he was touched or the man touched himself in an inappropriate manner and he [EF] said no" (brackets in original)), 24

(alleging that Bendlin observed that "it didn't seem like [EF] was shaken up by the incident" (brackets in original)).)  "Limited quotation does not constitute incorporation by reference." *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (alteration and citation omitted).  As such, the few small quotations in the Complaint do not incorporate the Statement by reference.  *See id.* (finding no incorporation where the "complaint merely discussed . . . documents and presented short quotations from them"); *see also Acevedo v. Harvard Maint. Co.*, No. 20-CV-721, 2021 WL 1224898, at *5 (S.D.N.Y. Mar. 31, 2021) ("[The] [p]laintiff's single reference to the arbitration proceeding is not enough to deem the arbitration award 'incorporated by reference.'" (citation omitted)), *appeal docketed*, No. 21-1200 (2d Cir. May 4, 2021).

"[T]he Court may properly consider even documents not quoted, incorporated by reference, or attached to the complaint when adjudicating a motion to dismiss if those documents are integral to the complaint." *Atlas Partners*, 2015 WL 4940126, at *7 (citation, ellipses, and quotation marks omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (holding that the court "could have viewed [documents] on the motion to dismiss because there was undisputed notice to [the] plaintiffs of their contents and they were integral to [the] plaintiffs' claim").  Documents are integral where the complaint "relies heavily upon the documents' terms and effect, and the plaintiff has actual notice of all the information in the documents and relied upon those documents in framing the complaint." *Anwar v. Fairfield Greenwich Ltd.*, 831 F. Supp. 2d 787, 791 (S.D.N.Y. 2011) (citation, alterations, and quotation marks omitted); *see also Cortec Indus., Inc.*, 949 F.2d at 48 (same).

There is no dispute Plaintiff had "actual notice" of the Statement, 831 F. Supp. 2d at 791, satisfying the notice requirement.  Plaintiff directly quoted from the Statement in the Complaint. (*See* Compl. ¶¶ 23–24.)  However, Plaintiff did not rely so heavily upon the Statement in drafting

4

the Complaint to rise to the level of integration.  Integration is a narrow exception, applying only to "a document upon which the complaint *solely* relies."  *Allen v. Chanel Inc.*, No. 12-CV-6758, 2013 WL 2413068, at *6 (S.D.N.Y. June 4, 2013) (quoting *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (summary order)).  Typically, the exception applies to "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason . . . was not attached to the complaint."  *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).  Often, this omission will be strategic, "because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim."  *Id.*  "[A] [p]laintiff['s] failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid— may not serve as a means of forestalling the district court's decision on the motion [to dismiss]." *Cortec Indus., Inc.*, 949 F.2d at 44.

In the Complaint, Plaintiff relied on portions of the Statement to allege he did not engage in unlawful conduct.  (See Compl. ¶¶ 23 (quoting the Statement to allege Bendlin "asked him [EF] if he was touched or the man touched himself in an inappropriate manner and he [EF] said no" (brackets in original)), 37 (alleging that "there were many contradicting statements made by EF or attributed to EF by . . . Bendlin . . . concerning material information such as: (a) the location of the alleged incident, (b) whether any inappropriate conduct occurred, (c) how the incident was first reported to Bendlin, and (d) whether EF was serious or joking").)  Because these references form only a very small portion of the Complaint, the Statement was not a document upon which Plaintiff "solely relie[d]."  *Allen*, 2013 WL 2413068, at *6 (emphasis omitted).  Courts have found that a document is integral to a complaint where the complaint would fail to state a claim without the integrated material.  *See, e.g.*, *Thomas v. Westchester*

*Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) (finding transcript and report from disciplinary hearing integral to plaintiff's complaint because the plaintiff relied on the documents to form the basis of the complaint and show the harm suffered); *Dipinto v. Westchester County*, No. 19-CV-793, 2019 WL 4142493, at *9 & n.6. (S.D.N.Y. Aug. 30, 2019) (finding transfer requests explicitly referenced in the plaintiff's complaint integral because the documents formed the basis for the defendant's alleged retaliation and without the documents there would be no complaint). Here, Plaintiff bases his claim on Defendant's actions, and does not rely on the Statement. (*See, e.g.*, Compl. ¶¶ 58–61.) Thus, the Statement is neither incorporated by reference nor integral to the Complaint, and the Court will not consider the Statement in evaluating Defendant's Motion.

After receiving the Statement, the Police met with Campus Security before meeting with EF and Bendlin. (*Id.* ¶ 26.) The Police did not pursue the matter any further, and no charges were initiated. (*Id.* ¶ 27.) Despite the Police's decision, Defendant opened a Title IX investigation into whether Plaintiff sexually harassed EF. (*Id.* ¶ 28.) On November 1, 2018, Donald Dean ("Dean") demanded that Plaintiff meet with him, even though Plaintiff lacked union or legal representation. (*Id.* ¶ 29.)[1] Dean—who is not a gay man—accused Plaintiff prior to a formal investigation of committing a federal crime and soliciting a minor. (*Id.* ¶¶ 30–31.) Plaintiff argues that this accusation—made before any formal investigation and after the Police declined to press charges—shows that Plaintiff was presumed guilty due to Dean's adherence to the stereotype that gay men are pedophiles. (Pl.'s Mem. 6–7.)

---

[1] While the Complaint alleges nothing regarding Dean's position, both Parties' briefs suggest that he was Defendant's Director of Human Resources. (*See* Def.'s Mem. 1; Pl.'s Mem. 3.)

Plaintiff was suspended without pay effective November 1, 2018.  (Compl. ¶ 32.)  This decision was made even though the evidence of Plaintiff's guilt was flimsy.  (*Id*. ¶ 33.)  EF declined to meet with the College's Title IX investigators and was not interested in pursuing the matter further.  (*Id*. ¶ 35.)  There was a language barrier between EF and Plaintiff, as EF speaks Japanese and Plaintiff only speaks English.  (*Id*. ¶ 36.)  The investigation revealed contradictions in statements by EF or attributed to EF by Bendlin, including the location of the conversation, whether inappropriate conduct occurred, how the incident was first reported to Bendlin, and whether EF was serious or joking.  (*Id*. ¶ 37.)  When the College's investigators asked EF how the conversation caused him to feel, EF responded "nothing."  (*Id*. ¶ 38.)  Throughout the investigation, the College's investigators altered Plaintiff's oral responses to their interview questions by writing things he had not said, manufactured meeting notes to reflect erroneous information, and subsequently ignored Plaintiff's request to correct this erroneous information.  (*Id*. ¶ 34.)

On January 10, 2019, Plaintiff submitted a memorandum to the College highlighting the lack of evidence and complaining of discrimination based on sexual orientation.  (*Id*. ¶ 39.)  He has received no response.  (*Id*. ¶ 42.)  Defendant terminated Plaintiff's employment two weeks later, on January 24, 2019, after finding that he had violated the College's sexual harassment policy.  (*Id*. ¶¶ 45–46.)  The College found that the interaction between EF and Plaintiff "ha[d] the appearance of being solicitous."  (*Id*. ¶ 43 (brackets in original).)  In fact, Defendant had no evidence that Plaintiff had violated its Title IX policy, which defines sexual harassment as "any unwelcomed sexual advance, requests for sexual favors, or other verbal or physical conduct or communication of a sexual nature."  (*Id*. ¶ 45.)  Plaintiff alleges that Defendant's finding was based on Defendant's discriminatory assumption that, because Plaintiff is a gay man who was

speaking with a male high school student, he was soliciting a sexual or romantic relationship with EF.  (*Id*. ¶ 44.)

On February 18, 2019, Plaintiff's counsel wrote to the College's President—a member of Keio's Board of Trustees—regarding its discriminatory treatment of Plaintiff.  (*Id*. ¶¶ 40–41.) The President has not responded to Plaintiff's complaints or denied discriminating against Plaintiff.  (*Id*. ¶ 42.)

Plaintiff requested a hearing pursuant to the College's Title IX procedure, and on April 4, 2019 a hearing was held before a panel of faculty members employed by Defendant (the "Title IX Hearing Panel" or the "Panel").  (*Id*. ¶¶ 47–48.)  At this hearing, Defendant and Plaintiff were allowed to present evidence, testify, and question witnesses.  (*Id*. ¶ 48.)  On April 11, 2019, the Panel reversed Defendant's findings, concluding that Plaintiff had not sexually harassed EF in violation of Title IX.  (*Id*. ¶ 49.)

On May 3, 2019, Plaintiff received an official reprimand letter from Dean, which conditioned his eligibility to serve as an adjunct professor on completing Prevention of Harassment training.  (*Id*. ¶ 50.)  Plaintiff completed this training on May 9, 2019.  (*Id*. ¶ 51.) Defendant subsequently moved the goalposts for Plaintiff's eligibility to work, requiring him to sign documents referring to the unsubstantiated Title IX sexual harassment charge and to allow disclosure to the College of confidential information provided by Plaintiff to his College-assigned counselor.  (*Id*. ¶ 52–53.)  Plaintiff protested signing the documents referring to the unsubstantiated Title IX charge.  (*Id*. ¶ 54.)  Stephanie Carcano ("Carcano"), a human resources employee of the College, replied on June 28, 2019.  (*Id*.)  Carcano stated that it was "important to recognize" that the Panel found Plaintiff "responsible for violating the College's Sexual Misconduct Policy – specifically the Employee Code of Conduct – 'engaging in conduct or

communicating in a manner that makes someone feel uncomfortable.'"  (*Id*.)  In fact, the

College's Sexual Misconduct Policy does not contain the quoted language.  (*Id*. ¶ 55.)  Instead,

that policy is part of the College's Employee Standards of Conduct Policy.  (*Id*.)  Plaintiff claims

that, through Carcano, the College willfully misrepresented its policies to accuse Plaintiff of

misconduct, notwithstanding the Panel's findings.  (*Id*. ¶ 56.)

Although Plaintiff completed the conditions to be eligible to teach by May 9, 2019,

Plaintiff was not permitted to work during the Fall 2019 Semester.  (*Id*. ¶ 57.)  He was permitted

to return for the Spring 2020 Semester, but was not assigned to the classes that he had been

typically assigned prior to November 1, 2018, and continues to be treated unfavorably compared

to his similarly situated peers, including those with less seniority.  (*Id*. ¶¶ 60–61.)

The College has continued to refer to information and allegations related to the Title IX

investigation in correspondence with Plaintiff and third parties, even though Plaintiff was cleared

by the Panel.  (*Id*. ¶ 58.)  This continued reference to Title IX harassment has embarrassed

Plaintiff and harmed his reputation.  (*Id*. ¶ 59.)

Plaintiff alleges that Defendant discriminated against him based on sex and/or sexual

orientation in violation of Title VII and NYSHRL, and retaliated against him for protected

activities in violation of Title VII and NYSHRL.  (*Id*. ¶¶ 62–85.)  Plaintiff seeks declaratory

relief, injunctive relief, compensatory and punitive damages, and attorneys' fees.  (*Id*. at 14.)

B.  Procedural Background

Plaintiff filed his Complaint on May 12, 2020.  (Compl.)  On August 20, 2020, Defendant

submitted a pre-motion letter containing the basis of its anticipated motion to dismiss pursuant to

Rule 12(b)(6).  (Dkt. No. 8.)  Plaintiff replied on August 24, 2020.  (Dkt. No. 9.)  The Court

scheduled a pre-motion conference for October 2, 2020, (Dkt. No. 10), at which it adopted a

briefing schedule for the Motion, (Dkt. No. 12; *see also* Dkt. (minute entry for Oct. 2, 2020)).

Defendant submitted its Motion on November 2, 2020.  (*See* Not. of Mot.; Decl. of Matthew E.

Stein in Supp. of Def.'s Mot. ("Stein Decl.") (Dkt. No. 14); Def.'s Mem.)  Plaintiff submitted his

Opposition on December 9, 2020.  (Pl.'s Mem.)  Defendant submitted its Reply on December 23,

2020.  (Reply Mem. of Law in Further Supp. of Def.'s Mot. ("Def.'s Reply") (Dkt. No. 17).)

## II.  Discussion

### A.  Standard of Review

When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all factual

allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.

*Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court, however, is not required to credit

"mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 678 (citation and

quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content

that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id.*  Specifically, the plaintiff must allege facts sufficient to show "more

than a sheer possibility that a defendant has acted unlawfully," *id.*, and if the plaintiff has not

"nudged [his] claims across the line from conceivable to plausible, [the] complaint must be

dismissed," *Twombly*, 550 U.S. at 570.

On a Rule 12(b)(6) motion to dismiss, the question "is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

*Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012).  Accordingly, the "purpose

of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal

sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding

its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (citation and

quotation marks omitted).  To decide the motion, the Court "may consider the facts as asserted

within the four corners of the complaint together with the documents attached to the complaint as

exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito*

*Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and quotation

marks omitted).

    B.  Analysis

        1.  Discrimination

Defendant argues that Plaintiff does not plead a plausible discrimination claim.  (Def.'s

Mem. 6–9.)  The Court agrees.

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any

individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  "The substantive standards applicable to

claims of employment discrimination under Title VII . . . are . . . well established." *Vivenzio v.*

*City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  To state a prima facie case of discrimination

under Title VII, a plaintiff "must show: (1) that he belonged to a protected class; (2) that he was

qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that

the adverse employment action occurred under circumstances giving rise to an inference of

discriminatory intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008); *see also*

*Borzon v. Green*, No. 16-CV-7385, 2018 WL 3212419, at *7 (S.D.N.Y. June 29, 2018) (same),

*aff'd*, 778 F. App'x 16 (2d Cir. 2019).  To satisfy the fourth requirement—the only one that

Defendant challenges—"[a]n inference of discrimination can arise from circumstances including,

but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading

terms; or its invidious comments about others in the employee's protected group; or the more

favorable treatment of employees not in the protected group; or the sequence of events leading to

the plaintiff's discharge."  *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)

(quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).  "The NYSHRL mirrors

these federal obligations."  *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014).

      Plaintiff argues that the "procedural irregularities" of Defendant's Title IX investigation

support an inference of bias.  (Pl.'s Mem. 7–8.)  The Second Circuit has held that, while such

irregularities "support the inference of bias, they do not necessarily relate to bias on account of

sex."  *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016); *see also Marquez v. Hoffman*, No.

18-CV-7315, 2021 WL 1226981, at *14 (S.D.N.Y. Mar. 31, 2021) (noting that "[a] 'clearly

irregular investigative adjudicative process' can . . . serve as evidence of discriminatory intent

when combined with other factors," and dismissing claims of race discrimination where the

plaintiff "failed to adequately allege that her race was a motivating factor in the decision to

terminate her employment" (citation omitted)); *cf. Bailey v. Nexstar Broad., Inc.*, No. 19-CV-

671, 2021 WL 848787, at *16 (D. Conn. Mar. 6, 2021) (noting on a motion for summary

judgment that procedural irregularities do not establish a discrimination claim where the plaintiff

"has not produced evidence tending to show that the shortcuts taken or the conclusions reached

during the investigative process were because of any pre-conceived gender bias, beyond [his]

own speculation about what motivated the decision").  The Second Circuit has held that a

plaintiff may "provide the requisite support for a prima facie case of sex discrimination" by

alleging that investigative irregularities occurred "amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex."  *Menaker v. Hofstra Univ*., 935 F.3d 20, 33 (2d Cir. 2019) (italics omitted); *see also Doe*, 831 F. 3d at 57 (holding that investigative irregularities plus "substantial criticism . . . accusing the [defendant] [u]niversity of not taking seriously complaints of female students alleging sexual assault by male students" gave "ample plausible support to a bias with respect to sex").  Other courts have extended this model, holding that a fact finder may infer that investigative irregularities arose due to discriminatory pressure from administrators, *see Hebert v. Unum Grp*., No. 18-CV-910, 2020 WL 7074706, at *16–17 (E.D. Tex. Sept. 11, 2020) (holding on a motion for summary judgment that administrators' "repeated questioning of [the investigator] as to why [the] [p]laintiff had not already been fired [was] evidence of pressure on [the employer] to act 'based on invidious stereotype,'" and that, combined with investigative irregularities, "a reasonable jury could find that a plausible inference of discrimination exist[ed]"), *report and recommendation adopted*, 2020 WL 5834241 (E.D. Tex. Sept. 30, 2020), or from a pattern of obstructing complaints, *see Marquez*, 2021 WL 1226981, at *14–15 (holding that the plaintiff sufficiently alleged sex discrimination where she alleged procedural irregularities and that her employer "actively obstructed, undermined, and dismantled specific initiatives to address workplace harassment" and "work[ed] to suppress [such] complaint[s]" (record references omitted)).

Here, Plaintiff does not allege internal or external pressure to reach an adverse employment decision or a pattern of mishandling complaints related to sexual orientation. Instead, he argues that Dean's pre-investigation accusation that Plaintiff solicited a minor was based on "the stereotype that gay men are pedophiles," and caused Plaintiff to be improperly "presumed guilty."  (Pl.'s Mem. 6–7.)  The question before the Court is whether this allegation

combined with the College's irregular investigation gives rise to a plausible inference of discriminatory intent.[2]  The Court concludes that it does not.

The presence of stereotyping may support the inference that an adverse action was due to a protected characteristic.  *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) (plurality opinion) (holding that "stereotyped remarks can certainly be evidence that gender played a part" in an adverse action (emphasis omitted)), *superseded by statute on other grounds*, *see Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1017 (2020); *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (holding that stereotypical remarks "'can certainly be evidence that gender played a part' in an employment decision" (emphasis omitted) (citing *Price Waterhouse*, 490 U.S. at 251)).  However, courts finding the presence of such stereotyping have done so based on comments that refer explicitly to stereotypical assumptions.  *See, e.g.*, *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 200 (2d Cir. 2017) (finding that the plaintiff plausibly alleged stereotyping where his supervisor "described him as 'effeminate' to others in the office, and depicted him in tights and a low-cut shirt 'prancing around'" (record reference omitted)); *Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009) (holding that "a reasonable jury could construe [the statement 'you probably did what the accuser said you did because you're male'] as an invidious sex stereotype"); *see also Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1241–42 (11th Cir. 2016) (finding statements that "it is time to put a man in there" and similar comments reflect sex stereotypes).  Absent remarks that have "plain . . . connotations,"  *Delgado v. City of Stamford*, No. 11-CV-1735, 2015 WL 6675534, at *21 (D. Conn. Nov. 2, 2015), courts do not find that stereotypes have influenced

---

[2] The Court assumes without deciding that Plaintiff alleges sufficiently significant irregularities to suggest discrimination.  *See Menaker*, 935 F.3d at 34 n.50 ("[M]inimal irregularities (absent other indicia of bias) do not suffice to suggest discrimination.").

employment decisions, *see, e.g., Weinstock v. Columbia Univ.*, 224 F.3d 33, 43–45 (2d Cir. 2000) (holding that use of "nice" and "nurturing" during tenure process did not relate to invidious stereotypes regarding female applicant); *Joseph v. Marco Polo Network, Inc.*, No. 09-CV-1597, 2010 WL 4513298, at *11 (S.D.N.Y. Nov. 10, 2010) (finding that references to "image" or "background" were not related to invidious stereotypes regarding Muslims); *Feder v. Bristol-Myers Squibb Co.*, 33 F. Supp. 2d 319, 331 (S.D.N.Y. 1999) (holding that the word "hostile" does not inherently "reflect an outmoded sexual stereotype"); *cf. Agnant v. CSC Holdings, LLC*, No. 17-CV-3349, 2020 WL 2615907, at *12 (E.D.N.Y. May 20, 2020) (holding that, despite alleged comments about the plaintiff's appearance, "none of these comments could reasonably be found to relate to [the plaintiff's] conformance or non-conformance with stereotypes about women").

Here, Plaintiff alleges that Dean, who had not witnessed the incident, accused him of soliciting EF before the College had investigated.  (Compl. ¶ 30.)  Plaintiff also cites two articles suggesting that there is a "stereotype that gay men are pedophiles."  (Pl.'s Mem. 6–7.)  However, the Amended Complaint does not plausibly allege that Dean was influenced by this stereotype. This case resembles *Williams v. Time Warner Inc.*, No. 09-CV-2962, 2010 WL 846970 (S.D.N.Y. Mar. 3, 2010), *aff'd*, 440 F. App'x 7 (2d Cir. 2011) (summary order).  There, the complaint alleged that "management stereotyped [the] [p]laintiff as an 'angry black woman' when [an executive] complained that [the] [p]laintiff was 'up in his face.'"  *Id.* at *4 (record reference, alteration, and some quotation marks omitted).  The court in *Williams* dismissed the plaintiff's discrimination claim, reasoning that "the [c]omplaint [did] not allege that anyone at [the plaintiff's employer] referred to [the] [p]laintiff as an 'angry black woman'; it allege[d] only that she perceived herself—for reasons left unstated—as being so stereotyped."  *Id.*; *see also*

*Kiley v. Am. Soc. for Prevention of Cruelty to Animals*, 296 F. App'x 107, 110 (2d Cir. 2008) (summary order) (affirming dismissal of a Title VII discrimination claim, and holding that a supervisor's comments to "be careful" and "watch out," "while possibly threatening, [did] not seem to bear any relationship to" a protected characteristic, notwithstanding the plaintiff's "conclusory statement that her supervisor made assumptions about her informed by gender stereotypes").  As in *Williams*, Plaintiff cites no statements by Dean reflecting the stereotype that gay men are pedophiles.  (*See generally* Compl.)  Nor does the Complaint allege any other facts to make plausible the view that Dean's accusation was driven by stereotypical thinking, even in part.  The Court assumes without deciding that Dean's premature accusation reflected a procedurally irregular presumption of guilt, but while this irregularity may "support the inference of bias, [it] do[es] not necessarily relate to bias on account of [sexual orientation]."  *See Doe*, 831 F.3d at 57.  Nor does the Amended Complaint allege pressure to discipline gay men, or any other basis from which to infer that Defendant discriminated based on sexual orientation.  Thus, Plaintiff's discrimination claims are dismissed.[3]

### 2.  Retaliation

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).  In other words, "Title VII forbids an employer to retaliate against an employee for . . . complaining of employment discrimination prohibited by Title VII."  *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461

---

[3] The Court does not consider and takes no position on Defendant's arguments that the Statement justified disciplining Plaintiff, (Def.'s Mem. 7–8), or that Plaintiff fails to allege that similarly situated heterosexual people were treated differently, (*id*. at 8).  Plaintiff may address these arguments if he decides to file an amended complaint.

F.3d 199, 205 (2d Cir. 2006).  To state a claim, a plaintiff must establish that: "[1] a plaintiff was engaged in protected activity; [2] the alleged retaliator knew that [the] plaintiff was involved in protected activity; [3] an adverse decision or course of action was taken against [the] plaintiff; and [4] a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002) (citation omitted); *accord McGuire-Welch v. House of the Good Shepherd*, 720 F. App'x 58, 62 (2d Cir. 2018) (summary order).  "A plaintiff's burden at this prima facie stage is de minimis." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (italics omitted).  Retaliation claims under § 1983 and the NYSHRL are subject to the same standard.  *See Goonewardena v. N.Y. Workers Comp. Bd.*, 258 F. Supp. 3d 326, 343–44 (S.D.N.Y. 2017) (treating retaliation claims under Title VII, § 1983, and the NYSHRL under the same standard), *aff'd*, 788 F. App'x 779 (2d. Cir. 2019) (summary order).  The Court therefore evaluates the substance of each of Plaintiff's retaliation claims—whether under Title VII or the NYSHRL—congruently.

Defendant contests only the fourth requirement: that Plaintiff establish "a causal connection . . . between the protected activity and the adverse action." *Weixel*, 287 F.3d at 148. (*See* Def.'s Mem. 9–11.)  "[T]o establish the last element of a prima facie case of retaliation, [Plaintiff] must show that the allegedly adverse actions occurred in circumstances from which a reasonable jury could infer retaliatory intent.  [The Second Circuit has] held that a close temporal relationship between a plaintiff's participation in protected activity and [a defendant's] adverse actions can be sufficient to establish causation." *Treglia*, 313 F.3d at 720; *see also Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." (citation and quotation marks omitted)); *Quinn v. Green*

*Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (holding that "less than two months" between protected activity and allegedly adverse action were sufficient to establish causation), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  A plaintiff's "presentation of a temporal connection" can be "enough, in and of itself . . . to permit a reasonable jury to find causation."  *Summa v. Hofstra Univ.*, 708 F.3d 115, 127 (2d Cir. 2013). Although the Second Circuit has not established a "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," a court must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases," *id.* at 128 (citation omitted), and a lengthy gap between the alleged protected activity and alleged adverse employment action can "suggest[], by itself, no causality at all," *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001).

Here, Plaintiff alleges that he complained of discrimination on both January 10, 2019 and February 18, 2019.  (Compl. ¶¶ 39, 40.)  The Court discusses each alleged basis for retaliation in turn.

### a.  January 10, 2019 Complaint

Plaintiff alleges that he complained of discrimination on January 10, 2019 and was terminated on January 24, 2019.  (*Id.* ¶¶ 39, 46.)  In a typical case, the close temporal relationship between Plaintiff's alleged protected actions and both his termination and subsequent discipline would suffice to allow a jury to infer retaliatory intent.  *See, e.g.*, *Murray v. Dutchess Cnty. Exec. Branch*, No. 17-CV-9121, 2019 WL 4688602, at *13 (S.D.N.Y. Sept. 25, 2019) (holding that the plaintiff's allegation of a two-to-three-month gap between "engaging in protected activity" and employment termination was "sufficiently narrow, at the motion-to-

dismiss stage, to satisfy the requisite causal connection" (collecting cases)); *Dawson v. City of New York*, No. 09-CV-5348, 2013 WL 4504620, at *18 (S.D.N.Y. Aug. 19, 2013) (noting that "[w]hile the Second Circuit has not established a 'bright line rule' with respect to the limits of temporal proximity, three months falls within the time period sufficient to permit an inference of retaliation").

Defendant argues that this is not the typical case, however, because "disciplinary proceedings regarding [Plaintiff's] admitted encounter with EF began before he submitted his January 10, 2019 memo."  (Def.'s Mem. 9; *see also id.* at 9–11.)  Indeed, Plaintiff's Complaint acknowledges as much: Plaintiff was accused of misconduct on November 1, 2018, (Compl. ¶ 30), which was before Plaintiff's January 10, 2019 complaint, (*id.* ¶ 39).  This puts Plaintiff's claim here in peril, at least to the extent it relies on temporal proximity.  "[W]here a plaintiff is 'demonstrably at risk' of the adverse action in advance of the protected activity, he 'cannot show on the basis of temporal proximity alone that that the adverse action resulted from that conduct.'" *Catanzaro v. City of New York*, No. 10-CV-1825, 2011 WL 335648, at *7 (S.D.N.Y. Jan. 25, 2011) (citation and brackets omitted), *aff'd*, 486 F. App'x 899 (2d Cir. 2012) (summary order); *see also Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."), *as amended* (June 6, 2001); *Powell v. Merrick Acad. Charter Sch.*, No. 16-CV-5315, 2018 WL 1135551, at *10 (E.D.N.Y. Feb. 28, 2018) (holding that, while an inference of retaliation would arise "in a vacuum," it did not because the plaintiff "was subject to disciplinary action and demonstrably at risk of losing her job before she engaged in any identifiable protected activity" (brackets and citation omitted)); *Williams v. City Univ. of N.Y., Brooklyn Coll.*, No. 10-CV-2127,

2011 WL 6934755, at *7 (E.D.N.Y. Dec. 30, 2011) (holding that the plaintiff could not rely on temporal proximity because he was demonstrably at risk before the protected activity).[4],[5]  Thus, the Amended Complaint may not rely on timing alone, and must provide an alternate basis to plausibly allege retaliatory intent.

Notwithstanding this gap, the Court concludes that the Amended Complaint plausibly alleges that Defendant retaliated for Plaintiff's January 10, 2019 complaint.  Plaintiff argues that the Amended Complaint plausibly pleads retaliatory intent by alleging that Defendant "ignor[ed] the lack of evidence of a Title IX violation and contradicting statements by EF but still proceed[ed] with termination."  (Pl.'s Mem. 11.)  Indeed, "procedural irregularities in the process that culminated in" adverse action against Plaintiff "lends further support to an inference of a retaliatory motivation." *Villar v. City of New York*, 135 F. Supp. 3d 105, 138 (S.D.N.Y. 2015); *see also Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846–47 (2d Cir. 2013) (finding that a reasonable jury could infer retaliatory motive because the employer "offered shifting and somewhat inconsistent explanations for" the adverse action); *Armstrong v. Metro. Transp. Auth.*, No. 07-CV-3561, 2014 WL 4276336, at *21 (S.D.N.Y. Aug. 28, 2014) ("The evidence that the denial of [the] [p]laintiff's transfer request resulted from a procedural irregularity further supports an inference of a retaliatory motivation for the denial."); *Jenkins v. Holder*, No. 11-CV-

---

[4] While *Slattery* concerns a claim under the Age Discrimination in Employment Act ("ADEA"), "the same standards and burdens apply to [retaliation] claims under both [ADEA and Title VII]."  *Kessler*, 461 F.3d at 205.

[5] The Court disagrees with Defendant's characterization that this line of cases *precludes* a showing of retaliation where the plaintiff was already at risk of discipline.  (*See* Def.'s Mem. 10 ("A retaliation claim will fail if, like here, there is no dispute that [the] plaintiff was already at risk of an adverse employment action prior to any alleged protected activity").)  The case law is clear that in these circumstances a plaintiff cannot show retaliation "on the basis of temporal proximity *alone*."  *Catanzaro*, 2011 WL 335648, at *7 (emphasis added).  Indeed, the contrary holding would free an employer to retaliate at any point after initiating a disciplinary proceeding.

268, 2014 WL 1311449, at *14 (E.D.N.Y. Mar. 28, 2014) ("Under Second Circuit precedent, failure to follow standard internal procedures and policies in terminating an employee can be the basis for inferring causation in a retaliation claim." (citing *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993))).  The Second Circuit has held that such irregularities may include a university's "arrival at conclusions that were 'incorrect and contrary to the weight of the evidence.'"  *Menaker*, 935 F.3d at 31 (quoting *Doe*, 831 F.3d at 57).  Plaintiff alleges that he was terminated despite "no evidence" that he sexually harassed EF.  (Compl. ¶ 45.)  That the Panel reversed Plaintiff's termination bolsters this claim as it suggests that the January 24, 2019 decision was irregular.  (*See id.* ¶ 49.)[6]  Thus, the Court concludes that Plaintiff has plausibly pleaded that Defendant retaliated for his January 10, 2019 complaint and therefore Defendant's Motion is denied with respect to this retaliation claim.

### b.  February 18, 2019 Complaint

Plaintiff also alleges that he complained of discrimination on February 18, 2019 and was subsequently subjected to discipline beyond what was required by his reprimand letter.  (Compl. ¶¶ 40, 50–61.)  Specifically, Plaintiff argues that Defendant

> added conditions to [Plaintiff's] reinstatement after he completed his training, demanded that [Plaintiff] sign documents referring to the unsubstantiated Title IX sexual harassment charge, demanded that [Plaintiff] sign documents allowing a counselor assigned to [Plaintiff] by Defendant to disclose confidential information, continued to claim that [Plaintiff] violated the 'College's Sexual Misconduct

---

[6] Plaintiff alleges that Defendant's investigators "altered [Plaintiff's] oral responses to their questions . . . , manufactured meeting notes that reflected erroneous information, and subsequently ignored [Plaintiff's] request to correct this erroneous information."  (Compl. ¶ 34.) However, because Plaintiff "has provided no dates [for] these events, . . . the Court cannot determine" whether they occurred after Plaintiff's January 10, 2019 complaint.  *Anand v. N.Y. State Dep't of Tax'n & Fin.*, No. 10-CV-5142, 2012 WL 2357720, at *6 (E.D.N.Y. June 18, 2012).  Thus, the Court takes no position regarding Plaintiff's retaliation claim based on these alleged facts.

Policy,' denied [Plaintiff] work until the Spring Semester 2020, and failed to assign classes to [Plaintiff] that he had typically been assigned prior to November 1, 2018.

(Pl.'s Mem. 11.)  Among these claims, Plaintiff identifies only a single date: June 28, 2019. (Compl. ¶ 54.)  On June 28, 2019, Defendant's human resources employee Carcano inaccurately stated that Plaintiff had violated the Sexual Misconduct Policy, while quoting the College's Employee Standards of Conduct Policy.  (*Id*. ¶¶ 54–55.)  She did so in response to Plaintiff's "protest of signing documents referring to the alleged Title IX misconduct."  (*Id*. ¶ 54.)  Thus, the Court infers that Defendant demanded that Plaintiff sign these documents prior to June 28, 2019.[7]  A four-and-a-half-month gap between the protected activity and adverse employment action does not preclude a causal connection.  *See Reuland v. Hynes*, No. 01-CV-5661, 2004 WL 1354467, at *11 (E.D.N.Y. June 17, 2004); *see also Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 785(S.D.N.Y. 2019) (finding that a gap of eight months between the alleged protected activity and alleged retaliatory conduct may be sufficient to allow an inference of causation).  Thus, Plaintiff has adequately pleaded temporal proximity for his claim that Defendants retaliated by demanding that he sign documents referring to the alleged Title IX misconduct.

By contrast, Plaintiff alleges no dates for Defendant's demand that he "allow disclosure of confidential information . . . by a counselor assigned to [Plaintiff]," (Compl. ¶ 53), for when Defendant informed Plaintiff "that he would be unable to work the Fall 2019 Semester," (*id.* ¶ 57), or for when Plaintiff "was not assigned classes that he had been typically assigned" upon

---

[7] Plaintiff accurately observes that Defendant does not contest that the Amended Complaint alleges an adverse employment action.  (Pl.'s Mem. 10.)  Thus, the Court assumes without deciding that these demands "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citation omitted).

his return for the Spring Semester 2020, (*id.* ¶¶ 60–61).  Because Plaintiff "has provided no dates

of these events, . . . the Court cannot determine whether there was a genuine temporal proximity

between them."  *Anand*, 2012 WL 2357720, at *6; *see also Cowan v. City of Mount Vernon*, No.

14-CV-8871, 2017 WL 1169667, at *12 (S.D.N.Y. Mar. 28, 2017) (holding that "without a clear

timeline of . . . events" the court could not determine whether the protected activity and adverse

action were "close enough in time to allow for an inference of causation").  Thus, Defendant's

Motion is granted with respect to these alleged retaliatory acts.

       As with his claim of retaliation for the January 10, 2019 complaint, Plaintiff may not rely

exclusively on temporal proximity because he was "'demonstrably at risk' of the adverse action

in advance of the protected activity."  *Catanzaro*, 2011 WL 335648, at *7.  Here, Plaintiff

alleges that, in response to his protests about signing documents referring to the alleged Title IX

misconduct, Defendant "willfully misrepresented its own policies in order to continue to accuse

[Plaintiff] of engaging in sexually harassing conduct despite the fact that the Panel did not find

[Plaintiff] responsible for such alleged conduct."  (Compl. ¶ 56.)  Misrepresentations can suggest

procedural irregularity where, as here, they are used to justify an employer's disciplinary

decisions.  *See Bick v. City of New York*, No. 95-CV-8781, 1998 WL 190283, at *9 (S.D.N.Y.

Apr. 21, 1998) (holding that bias could be inferred because the investigator "when preparing her

interview summaries misrepresented a number of key statements" and "these

mischaracterizations were consistently adverse to [the plaintiff]"); *see also Eldaghar v. City of*

*New York Dep't of Citywide Admin. Servs.*, No. 02-CV-9151, 2008 WL 2971467, at *13

(S.D.N.Y. July 31, 2008) (noting "triable issues regarding the accuracy of some of the

information contained in the probationary reports and memoranda documenting [the] [p]laintiff's

allegedly unsatisfactory job performance").  Between the alleged temporal proximity and

23

misrepresentation intended to secure Plaintiff's compliance with disciplinary measures, Plaintiff

has plausibly pleaded that Defendant retaliated for his February 18, 2019 complaint by

demanding that he sign documents referring to the alleged Title IX misconduct.  (*See* Compl.

¶ 54.)  Thus, Defendant's Motion is denied with respect to the claim that Defendant demanded

that Plaintiff sign documents referring to the alleged Title IX misconduct.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is granted in part and denied

in part.  Plaintiff's retaliation claims—based on both his January 10, 2019 and February 18, 2019

complaints—survive.  Plaintiff's discrimination claim is dismissed.  Because this is the first

adjudication of Plaintiff's claims, this partial dismissal is without prejudice.  Plaintiff may file an

amended complaint within 30 days of the date of this Opinion & Order.  The Court will hold a

telephonic conference on September 20, 2021 at 1:30PM.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No.

13).

SO ORDERED.

DATED:        July 20, 2021
              White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE